UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DELMAR AUTO PLAZA, LTD., <br><br> Petitioner, <br><br> v. <br><br> UNITED STATES SMALL BUSINESS ADMINISTRATION OFFICE OF CAPITAL ACCESS, <br><br> Respondent. | Case No.: 1:23-CV-1078 (TJM/DJS) |

PETITION FOR REVIEW OF DECISION AND ORDER OF SMALL BUSINESS ADMINISTRATION OFFICE OF HEARINGS AND APPEALS PURSUANT TO 13 C.F.R. SECTION 134.1211(g)

Petitioner Delmar Auto Plaza, Ltd., ("Delmar") by its undersigned counsel, The Towne Law Firm, P.C., hereby petitions the court for review of the Order of the Office of Hearings and Appeals ("OHA") denying Petitioner's appeal of a Paycheck Protection Program ("PPP") loan review decision issued by the United States Small Business Administration, Office of Capital Access ("SBA").

**PARTIES**

1. Petitioner Delmar Auto Plaza, Ltd., is a Domestic Business Corporation organized and existing under the laws of the State of New York, having a principal place of business 1258 Central Ave., Albany, NY, 12205.

2. Defendant SBA is an independent federal agency created and authorized pursuant to 15 U.S.C. §633 et. Seq. The SBA's principal place of business is 409 Third Street, Washington, D.C. 20416.

1

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction of this action under 28 U.S.C. §1331 because this action arises under the laws of the United States. This Court also has subject matter jurisdiction under 5 U.S.C. §702.

4. Further, 13 C.F.R. §134.1211(g) provides that final decisions of the OHA upon its review of a final SBA loan review decision "may be appealed to the appropriate Federal district court only."

5. Venue is proper in the Northern District of New York under 28 U.S.C. §1391(e) as Respondent SBA is an agency of the United States and Petitioner's principal place of business is in the Northern District of New York, where a majority of the facts giving rise to the issues to be decided herein occurred.

## STATEMENT OF FACTS

6. Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020), in order to mitigate the economic devastation and mass unemployment caused by the Covid-19 Pandemic ("Covid-19"). Congress created the PPP to help accomplish that critical goal. The PPP authorized the SBA to guarantee hundreds of billions of dollars in loans to small businesses. PPP loans were to be made by private lenders with Congress pledging to forgive these loans provided that, among other things, the borrowers used most of the proceeds to pay employees' wages, rent and lease payments and other operating expenses. *See* 15 U.S.C. § 636(a)(36)(F).

7. When discussing the need for the CARES Act, various governmental officials focused upon the need to sustain small and mid-sized businesses, as well as their workers, so that the

country could someday return to its normal, pre-pandemic activities. U.S. Senator John Barraso spoke at the Legislative Session stating, "Our businesses, small businesses, have been hit hard. Our restaurants, **our other businesses that have shut down, that don't have the same resources to come to Washington, DC, and to lobby for aid and support**, are counting on us to create a program those small businesses can get both grants and loans. So, the $350 billion in this program I hope SBA will help dispatch with urgency to those businesses that have complied and **have done their best to keep their employees while also shutting down their business**." LEGISLATIVE SESSION; Congressional Record Vol. 166, No. 59, Page S2025. (Emphasis added).

8. U.S. Senator Chuck Schumer added, "…This bill offers $350 billion in loan forgiveness grants to small businesses to **keep their existing workforce** and to help pay for things like rent, mortgages, and utilities. It provides $10 billion in emergency grants to provide immediate relief for small business operating costs…" LEGISLATIVE SESSION; Congressional Record Vol. 166, No. 59, Page S2027. (Emphasis added).

9. "The PPP is a new loan program to be administered by the SBA under Section 7(a) of the Small Business Act (codified at 15 U.S.C. § 636(a)). Its purpose is to assist small businesses during the COVID-19 crisis by immediately extending them loans on favorable terms." Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin., 458 F. Supp.3d 1044, 1050 (E.D. Wis. 2020). The CARES Act became law on March 27, 2020. P.L. 116-136.

10. The CARES Act amended Section 7(a) of the Small Business Act to make forgivable and tax-free Paycheck Protection Program loans of up to $10 million available to "small businesses" and certain larger businesses that fall under North American Industry Classification System (NAICS) Sector 72, which defines "Accommodation and Food Services," such as restaurants.

11. The CARES Act authorized the SBA to issue regulations implementing the PPP without adhering to the "notice-and-comment process" that typically governs agency rulemaking. *See* Pub. L. 116-136, § 1114.

12. Specifically, the CARES Act provided that no later than 15 days after its enactment, the SBA "shall issue regulations to carry out this title and the amendments made by this title without regard to the notice requirements under [the APA]." 15 U.S.C. § 9012.

13. Pursuant to that grant of authority, the SBA issued many interim rules discussing the implementation of the PPP loan standards. As the pandemic progressed, the SBA recognized the ongoing need for businesses to continue to help support their workforce.

14. On January 14, 2021, SBA published two interim final rules implementing the Economic Aid Act amendments to the PPP. The first interim final rule implemented the Economic Aid Act changes to, among other things, PPP eligibility, and consolidated numerous prior interim final rules on the PPP (86 FR 3692) (Consolidated Eligibility IFR).

15. The second interim final rule, discussed the Second Draw PPP Loan program authorized by the Economic Aid Act under section 7(a)(37) of the Small Business Act (86 FR 3712) (Second Draw IFR).

16. On February 5, 2021, SBA published a third interim final rule implementing Economic Aid Act changes related to the forgiveness and review of PPP loans (86 FR 8283) (Consolidated Forgiveness and Loan Review IFR).

17. Under the second interim final rule published on January 14, 2021, the eligibility requirements for a Second Draw PPP Loan were that the borrower: Must have 300 or fewer employees; Experienced a revenue reduction in 2020 related to 2019; Received a First Draw PPP Loan; and That the borrower used, or would use the full about of the First Draw PPP Loan on or

4

before the expected date on which the Second Draw PPP Loan is disbursed to the borrower. (86 FR 3712) (Second Draw IFR).

18. Additionally, this Second Draw IFR, confirmed that the same affiliation rules that applied to the First Draw PPP Loans applied to the Second Draw PPP Loans.

19. The detailed affiliation standards contained in §121.103 do not apply to PPP borrowers, because §121.103(a)(8) provides that applicants in SBA's Business Loan Programs (which include the PPP) are subject to the affiliation rule contained in 13 CFR 121.301. Federal Register/Vol. 85, No. 73/Wednesday, April 15, 2020/Rules and Regulations.

20. The SBA regulations provide that entities are to be deemed affiliates of each other when one controls or has the power to control the other, or a third party or parties controls or has the power to control both. Whether or not control is exercised is irrelevant, so long as the power to control exists. Control may arise through ownership, management, or other relationships or interactions between the parties. *See* 13 C.F.R. §121.301(f).

21. The affiliation rules clearly state that they, "are waived for (1) any business concern with not more than 500 employees, that as of the date on which the loan is disbursed, is assigned a North American Industry Classification System ("NAICS") code beginning with 72; (2) any business concern operating as a franchise that is assigned a franchise identifier code by the SBA; and (3) any business concern that receives financial assistance from a company licensed under section 301 of the Small Business Investment Act of 1958 (15 U.S.C. 681)."

22. The interim final rules issued on January 14, 2021, the SBA also discussed Corporate Group Maximums. A Corporate Group is defined as follows: "For purposes of this limit, businesses are part of a single corporate group if they are majority owned, directly or indirectly, by a **common parent**." (86 FR 3692) (Consolidated Eligibility IFR). (Emphasis added).

23. However, the rule goes on to confirm, "SBA's affiliation rules, **which relate to an applicant's eligibility for PPP loans**, and any waiver of those rules under the CARES Act, continue to apply independent of this limitation." *Id.* (Emphasis added).

24. The Second Draw IFR references the First Draw PPP IFR when discussing a single Corporate Group and states simply, "Corporate Group has the same meaning as in subsection (B)(4)(f) of the Consolidated First Draw PPP IFR." (86 FR 3712) (Second Draw IFR).

25. The term "common parent" is not defined in any interim final rule or other publications promulgated by the SBA.

26. When trying to seek clarity regarding such term, if we refer to other Federal Regulations, such as the Federal Acquisition Regulations System, they define common parent as, **"[a] corporate entity** that owns or controls an affiliated group of corporations that files its Federal income tax returns on a consolidated basis, and of which the offeror is a member." Title 48, 63 FR 58589, Oct. 30, 1998. (Emphasis added).

27. Additionally, the Internal Revenue Service states in Internal Revenue Code 1504 that "Generally, **only a corporation** shall be treated as the common parent entity of an expanded affiliated group, unless the taxpayer elects to follow the approach described in Treas. Reg. 1.1471-5(i)(10)." (Emphasis added).

28. In fact, Petitions such as this one, are required to file a Corporate Disclosure Statement, in which Petitioner must confirm that it has **no parent corporation** and no publicly held corporation owns 10% or more of its stock. (Emphasis added).

29. Under these parameters, it can be assumed that the SBA's common parent definition would be a single corporate entity that held ownership in or control of affiliated entities, whose affiliation

would be confirmed by filed tax returns. Thus, a Corporate Group with a "common parent" would be the companies affiliated by the ownership control of one corporate entity.

30. In accordance with these requirements, Delmar applied for and received a Second Draw PPP Loan.

31. As Delmar operates a Honda and Hyundai Auto Dealership, which is one of the franchises assigned a franchise identified code, Delmar was afforded the affiliation waiver.

32. Additionally, Delmar had 300 employees or fewer, experienced a reduction in 2020 as compared to 2019, and used up all the First Draw PPP Loan Money before the disbursement of this Second Draw PPP Loan.

33. As such, Delmar was eligible for the PPP Second Draw Loan, was approved on May 11, 2021 and received $1,969,185.00 under SBA Loan No. 7972518901.

34. Delmar received the Second Draw PPP Loan, and assumed that perhaps the affiliation waivers applied, and thus that this error was of no concern and had no impact, not realizing that there could be consequences when applying for forgiveness.

35. Delmar fulfilled its obligations under the PPP Loan program by paying out the majority of the Second Draw PPP Loan proceeds exclusively for payroll, and thus it fulfilled Congress' intent of having the PPP Loan recipients assist in reducing much of the financial burden off of the New York State unemployment system.

36. Delmar applied for forgiveness of the Second Draw Loan on February 17, 2022, yet despite using the funds exactly as Congress intended, in return it has been denied a discharge of the loan.

37. It should be noted that perhaps the loan denial was based on an error in the loan application form, in which the Petitioner checked "yes" when asked, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management (including a management

agreement) with any other business?" *Paycheck Protection Program Second Draw Borrower Application Form.*

38. To confirm, Delmar. does <u>not</u> have a common management agreement with another business.

39. Delmar was denied loan forgiveness by the Small Business Administration on October 6, 2022; however, Delmar never received formal written notice of the denial from the SBA. It is assumed that if there were emails sent to the Appellant, that they were blocked by a spam filter.

40. Simultaneously Petitioner's family had to deal with the loss of both parents within fourteen months of each other and were unexpectedly shifted the burden of running twenty-one dealerships at the same time.

41. As Petitioner had no reason to believe the Second Draw PPP Loans would be treated any differently than the First Draw PPP Loans where forgiveness was granted, Petitioner did not follow up on the final decision letters until after dealing with their familial obligations, and Delmar only received the denial letter when it inquired to its Lender, Manufacturers and Traders Trust Company, about the status of its forgiveness application.

42. In accordance with the law, Delmar filed its appeal on June 30, 2023, with the OHA as the application of the rules was arbitrary and capricious and a clear error of fact and law.

43. On July 6, 2023, the OHA order was filed by Administrative Law Judge Zamora dismissing Petitioner's petition and affirming the SBA final decision.

44. The OHA order became a final decision thirty days later pursuant to 13 C.F.R. § 134.1211(d).

45. Petitioner now appeals the OHA Final Decision pursuant to 13 C.F.R. § 134.1211(g).

46. The Administrative Procedures Act ("APA") authorizes judicial review of federal agency actions. 5 U.S.C. § 702. The APA provides that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." Id. § 706(2)(A), (C).

### FIRST CAUSE OF ACTION
(Agency Action Contrary to Law (CARES ACT, 5 U.S.C. §706(2), and 5 U.S.C. § 702)

47. Delmar repeats and realleges paragraphs 1 through 47 as if fully set forth herein.

48. Pursuant to 4 U.S.C. § 706(2), this Court has the authority and shall: (2) hold unlawful and set aside agency action, findings, and conclusions found to be -- (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance or procedure required by law.

49. The CARES Act provides that "[d]uring the covered period, in addition to small business concerns, **any** business concern . . . shall be eligible to receive a covered loan if the business concern . . . employs not more than the greater of (I) less than 500 employees or (II) if applicable, the size standard in number of employees established by the Administration for the industry in which the business concern . . .operates." 15 U.S.C.A. § 636(a)(36)(D). (Emphasis added). The CARES Act does not authorize the SBA to impose additional eligibility criteria for PPP loans or forgiveness, including the PPP Ineligibility Rule.

50. It is undisputed that Delmar, by itself, meets the eligibility criteria for a small business under the SBA PPP criteria and would have been granted a further waiver if it was part of a Franchise chain.

51. It is further undisputed that the Senate recognized the hardship the pandemic created for businesses, and that Delmar is the exact type of small business concern the CARES Act was meant to assist.

52. Respondent's actions to deny Delmar loan forgiveness due to corporate group maximums when Delmar does not share a common parent with any other entity is a clear error of law.

53. Without a clear definition of common parent, and with Delmar proving that there is no singular corporate entity that manages this entity or the other entities, the SBA's denial of forgiveness is arbitrary and capricious and without valid reason.

54. This Court should therefore declare the Respondent's Final Loan Review Decision denying Petitioner's full PPP loan forgiveness as unlawful and set it aside.

## SECOND CAUSE OF ACTION
**Declaratory Judgement**

55. Delmar repeats and realleges paragraphs 1 through 55 as if fully set forth herein.

56. There is an actual controversy between Plaintiff and Defendant concerning Plaintiff's full loan forgiveness under the PPP.

57. Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not relief is or could be sought."

58. Respondent arbitrarily applied the corporate group maximum rule, without considering if they had a true common parent, resulting in the Petitioner being treated disparately from other business concerns.

59. Respondent relied on an error of fact, regarding the application where Delmar had inadvertently checked yes when asked if there was common management.

60. Accordingly, Petitioner seeks a declaration that the Respondent's Final Loan Decision denying Petition's full PPP loan forgiveness was unlawful and must be withdrawn.

WHEREFORE, Petitioner prays for Judgment against Respondent as follows:

    a. For a judgment declaring the Respondent's Final Loan Review Decision unlawful;

    b. For a judgment setting aside Respondent's Final Loan Review Decision and a determination that Petitioner's full PPP amount of $1,969,185.00 be forgiven;

    c. Award Petition its attorneys' fees and costs of suit; and

    d. Such other relief as this Court deems just and proper.

DATED:    August 25, 2023
              Albany, New York

Respectfully submitted,

THE TOWNE LAW FIRM, P.C.

By:    **s/ James T. Towne, Jr. Esq.**
        James T. Towne, Jr. Esq.
        *Attorneys for Petitioner*
        Bar Roll No.: 601203
        500 New Karner Road
        Albany, New York 12212-5072
        Tel. No.: (518) 452-1800
        james.towne@townelaw.com